MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

DAVID R. CALLAWAY (CABN 121782)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, CA 95113
    Telephone: (408) 535-5596
    Fax:  (408) 535-5066
    E-Mail: David.Callaway@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 10-CR-0494 EJD |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | Date: August 4, 2014 |
| BRIAN DUNNING, | Time: 1:30 p.m. |
| Defendant. | Before The Honorable Edward J. Davila |

## INTRODUCTION

Based on information the defense provided to the Probation Officer, the government expects[1] Mr. Dunning to argue for a probationary sentence based on (1) the sentence imposed against a defendant in a related case, (2) the allegedly traumatic impact the investigation and prosecution have had on Mr. Dunning and his family, and (3) letters of support from friends and family. The government

---

[1] At 6:27 p.m. this evening I received a copy of Mr. Dunning's Administrative Motion to File Sentencing Memorandum and Exhibits Under Seal, which attaches the memorandum Mr. Dunning proposes to file. So as not to have the unfair benefit of reading his version before filing, I have not read Mr. Dunning's memorandum and will not do so until after this is filed.

CR 10-0494 EJD
GOVT'S SENTENCING MEMORANDUM (Dunning)    1

believes none of these factors justifies a non-custodial sentence for a man who, by his own admission, engaged in a highly sophisticated scheme to steal several hundred thousand dollars. The other sentence is irrelevant; for reasons known to the Court, that defendant earned a substantial downward departure. As for the second factor, it is undeniable that those who commit serious criminal offenses often bring pain to their innocent families; this happens to ordinary "blue-collar" defendants – bank robbers, drug dealers, and the like – and there is no reason in fairness why a sophisticated white-collar criminal and his family should be spared those same consequences. Finally, there are the letters. The government shares the discomfort U.S. Probation Officer Flores expressed at the recurring theme in so many of them, that the FBI "raid" allegedly "traumatized" the defendant's family,[2] as if somehow the Dunning family deserved to be insulated from the adverse consequences caused by law enforcement agents simply doing their jobs, executing a search warrant to investigate the crimes that he, Brian Dunning, knowingly, willfully, and fraudulently committed.

There is no "Get out of Trauma Free" card for white-collar criminals or, unfortunately, their families. The government respectfully requests the Court to sentence Brian Dunning to a term of 27 months' imprisonment, the low-end of his Sentencing Guidelines range.

## DISCUSSION

The Presentence Report engages in a thoughtful evaluation of the sentencing factors before recommending a sentence that itself represents a substantial reduction from the 27-33 month range called for under the Sentencing Guidelines.[3] The PSR recommends 21 months' imprisonment to be followed by a three year term of supervised release, a $10,000 fine,[4] and a mandatory $100 special assessment. The government does not dispute the reasonableness of that prison recommendation, even though it is six months – or 22 % – lower than the government is seeking; and one must certainly acknowledge that the officer making that recommendation, USPO Flores, is one of, if not the most experienced probation officers in this District.

---

[2] PSR Sentencing Recommendation, at p. 2.

[3] The Plea Agreement (¶ 8) caps Mr. Dunning's exposure at 29 months.

[4] The Plea Agreement, if accepted by the Court, does not permit any fine to be imposed.

CR 10-0494 EJD
GOVT'S SENTENCING MEMORANDUM (Dunning)        2

18 U.S.C. § 3553(a) directs the Court to consider the following factors in fashioning an appropriate sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>
>   * * *
>
> (5) any pertinent policy statement[s]
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The government respectfully submits that a Guidelines sentence – or certainly a sentence no lower than the one recommended by Probation – best achieves those sentencing objectives.

1. <u>Nature and Circumstances of the Offense, Personal Characteristics of the Defendant</u>

The crime in this case was motivated by pure greed. As the plea agreement and the excellent factual summary in the PSR both make clear, Mr. Dunning used his technical expertise and programing skills to steal money from eBay. Mr. Dunning tricked eBay, through so-called "cookie stuffing," into paying him for traffic to eBay's website that, in fact, he had done nothing to deliver. This was no "smash and grab," motivated by poverty, hunger, or substance abuse, but rather a clever, sophisticated,

calculated criminal scheme carried out over several years by a man who certainly had no pressing need for the money.

Mr. Dunning did quite well. As the PSR notes (¶ 40), he was able to pay off his mortgage in 2007 using the proceeds of commissions paid to him by eBay.[5] It is therefore ironic that one of the arguments Mr. Dunning may be expected to make in an effort to avoid prison is that, if he is sent to prison, he and his family might be forced to sell the house (*see* PSR ¶ 42) – although, since there are no bank liens, it is unclear exactly who the Dunnings are expecting to force a sale: Mr. Dunning's attorneys? His step-father? Regardless, like the "trauma" theme discussed earlier, the government would submit that any risk that Mr. Dunning might have to sell or refinance his home to pay legal fees falls into the category of a self-inflicted wound.

2. <u>Seriousness of the Offense, Deterrence (General and Specific), Rehabilitation</u>

This was a serious crime, motivated solely by greed, and one that cost the victim several hundred thousand dollars in losses. The sentence imposed, the government respectfully submits, should reflect this hard truth. In addition, the deterrent value of a custodial sentence is generally thought to be greater for white-collar defendants:

> The potential value for deterrence in the punishment of white-collar and corporate crime is much higher than it is for blue-collar crimes. [footnote] It is very difficult to deter crimes of passion, which tend to be spontaneous, and other crimes with very little or no premeditation because most of these offenders simply do not formulate a cost-benefit analysis through which deterrence plays a role. [footnote] On the other hand, many white-collar and corporate criminals are very sophisticated, and their crimes generally take much planning, thought, and deliberation. As a result of this sophistication and the nature of their crimes, they have far more time to contemplate what they are doing and the likely consequences if caught. Further, these are generally very educated people who pay attention to current events, and thus, they will receive the deterrence messages and warnings when they are reported in the news. [footnote][6]

The enhanced deterrence value of a prison term would be all the greater in Mr. Dunning's case, as he is at least somewhat of a "public figure" by virtue of his podcast, "Skeptoid: Critical Analysis of

---

[5] To be clear, the government does not allege that every dime used to pay off that mortgage was obtained fraudulently.

[6] J. Scott Dutcher, Comment, *From the Boardroom to the Cellblock: The Justifications for Harsher Punishment of White-Collar and Corporate Crime*, 37 Ariz. St. L.J. 1295, 1308 (2005)

CR 10-0494 EJD
GOVT'S SENTENCING MEMORANDUM (Dunning)         4

Pop Phenomena," which he claims has a weekly audience of 179,000 listeners (PSR ¶48). Mr. Dunning has written five books based on the podcast (*id*.), and he even has a "rap" video.[7]

### 3. The Kinds of Sentences Available, Sentencing Range Under the Guidelines

As USPO Flores notes in his sentencing recommendation, the Guidelines range has been calculated using a loss range to which the parties have stipulated: a loss between $200,000 and $400,000. Mr. Dunning should therefore not be heard to argue that this is a case in which the Sentencing Guidelines range is unfairly high, overstates his culpability, or is otherwise unreasonable. As noted previously, the PSR correctly calculates the sentencing range to be between 27 and 33 months, while the plea agreement limits Mr. Dunning's exposure to a maximum of 29 months. A prison term is certainly appropriate here.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

As mentioned in the introduction, the government expects Mr. Dunning to argue that his sentence should be no greater than that imposed upon the defendant in a related case. It is true that the sentence the government seeks here is greater than it sought for that defendant, and greater still than the sentence the Court ultimately decided to impose. The government would respectfully submit, however, that the other sentence is beside the point: Section 3553(a) directs the sentencing court to avoid *unwarranted* sentencing disparities. Any discrepancy here is justified by the fact that, unlike Mr. Dunning, the other defendant benefitted from a government motion for a substantial and well-earned departure. It is not an apples to apples (or "cookies to cookies") comparison between him and Mr. Dunning.

### 5. Restitution is Not a Sentencing Factor

Mr. Dunning has reached a separate settlement with eBay for an undisclosed figure (the government does not know the amount) that dispenses with any requirement that this Court address restitution.. As a result, however, the argument that many white-collar defendants raise ("I need to be out and working so I can pay restitution") does not apply here.

## CONCLUSION

The government submits that a prison term is needed to reflect the seriousness of the offense, achieve the goal of general deterrence, and to punish Brian Dunning appropriately for a crime he

---

[7] http://skeptoid.com/episodes/4400

1  committed based purely on avarice. In view of his guilty plea, the government recommends a sentence at
2  the low-end of the Guidelines range – 27 months – followed by a three-year term of supervised release,
3  and respectfully submits that this would be punishment "sufficient, but not greater than necessary" to
4  achieve the sentencing goals set forth in Section 3553(a). The government agrees that no fine or
5  restitution should be imposed in light of the civil settlement.

6  DATED: July 28, 2014　　　　　　　　　　　　Respectfully submitted,

7  　　　　　　　　　　　　　　　　　　　　　　MELINDA HAAG
　　United States Attorney
8

9  　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　DAVID R. CALLAWAY
10 　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney